United States District Court
Southern District of Texas
**ENTERED**
September 29, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NATIONAL TRUST INSURANCE COMPANY and FCCI INSURANCE COMPANY, Plaintiffs, vs. G CREEK INC, Defendant. | § § § § § § § § § § § § § § | CIVIL ACTION NO 4:22-cv-00860  JUDGE CHARLES ESKRIDGE |

OPINION AND ORDER ON
CROSS-MOTIONS FOR SUMMARY JUDGMENT

The motion by Plaintiffs National Trust Insurance Company and FCCI Insurance Company for summary judgment is denied. Dkt 18.

The cross-motion by Defendant G Creek, Inc for summary judgment is granted. Dkt 19.

1.  Background

This is a dispute over insurance coverage. Defendant G Creek is a general contractor. It holds commercial primary package policies with Plaintiffs National Trust Insurance Company and FCCI Insurance Company, who are referred to here as *the Insurers*. Dkt 1 at ¶¶ 6–11.

The Insurers filed this declaratory judgment action to establish that they owe no duty to defend or indemnify G Creek in an underlying lawsuit in state court for breach of contract. Pending are competing motions by the parties for summary judgment on the issue of whether the duty of

the Insurers to defend G Creek was triggered by the allegations in the underlying petition.

### a. The underlying lawsuit

Action was filed in Texas state court in September 2021 against G Creek by Retail Games, LLC and Fen & Lip Properties, LLC. See Dkt 17-1 at 2. They had hired G Creek in August 2016 to construct a 28,000-square-foot commercial building in Huntsville, Texas. At base, they allege that G Creek breached that contract by failing to properly install the roof. Id at 5.

The underlying petition alleges that roof leaks were first noticed at the Huntsville building in August 2017. G Creek exchanged emails with Retail Games about this and sent a crew to fix the leaks. "Additional leaks occurred in 2018 and 2019," which Retail Games paid out of pocket "with no contribution from [G Creek]." Id at 3–4.

Retail Games filed a claim with its own insurer in March 2021, and the insurer hired an engineer to determine the cause of the additional leaks. Id at 4. "This engineer determined that the roof leaks were not the result of a covered event but rather the roof leaks were caused by the defective installation of the roof at the time the roof was installed in 2017"—and thus the leaks didn't result from an event covered by the insurer of Retail Games. Ibid.

Retail Games filed the underlying state court lawsuit after G Creek "refused to assist . . . in any way" with fixing the roof. Ibid. Its petition alleges the following damage:

> 11. There are presently 21 roof leaks in Plaintiffs' building. . . .
>
> 12. Unless and until this defective roof is completely replaced and all water soaked insulation is professionally removed, [Retail Games] will be incurring loss of rental income and deterioration in the value of the building.

Ibid.

### b. The policies

G Creek holds policies with the Insurers that include general liability coverage for two annual policy terms covering mid-2020 through mid-2022. See Dkt 18-1 at 9, 257, 506, 558. The relevant policy language is identical in the policies issued by both National Trust and FCCI. Dkt 18 at 5–8.

The policies generally cover property damage, unless it was known to have occurred prior to the policy period. Any "continuation, change or resumption" of such previously known property damage isn't covered. Dkt 17-1 at 132; see also Dkt 18 at 5–8.

With more specificity, the policies apply if G Creek "becomes legally obligated to pay as damages because of . . . 'property damage.'" Dkt 17-1 at 132. But the insurance only applies if:

> (1) The . . . "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>
> (2) The . . . "property damage" occurs during the policy period; and
>
> (3) Prior to the policy period, no insured . . . knew that the . . . "property damage" had occurred, in whole or in part. If such a listed insured . . . knew, prior to the policy period, that the . . . "property damage" occurred, then any continuation, change, or resumption of such . . . "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

Dkt 17-1 at 132.

The policies define *occurrence* as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id at 146.

3

>The policies define *property damage* as:
>>a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>>
>>b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Ibid.

### 2. Legal standard

Rule 56(a) of the Federal Rules of Civil Procedure requires a court to enter summary judgment when the movant establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is *material* if it "might affect the outcome of the suit under the governing law." *Sulzer Carbomedics Inc v Oregon Cardio-Devices Inc*, 257 F3d 449, 456 (5th Cir 2001), quoting *Anderson v Liberty Lobby, Inc*, 477 US 242, 248 (1986). And a dispute is *genuine* if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal v CCC & R Tres Arboles LLC*, 736 F3d 396, 400 (5th Cir 2013), quoting *Anderson*, 477 US at 248.

The summary judgment stage doesn't involve weighing evidence or determining the truth of the matter. The task is solely to determine whether a genuine issue exists that would allow "a reasonable jury [to] return a verdict for the nonmoving party." *Smith v Harris County*, 956 F3d 311, 316 (5th Cir 2020), quoting *Anderson*, 477 US at 248. Disputed factual issues must be resolved in favor of the nonmoving party. *Little v Liquid Air Corp*, 37 F3d 1069, 1075 (5th Cir 1994). All reasonable inferences must also be drawn in the light most favorable to the nonmoving party. *Connors v Graves*, 538 F3d 373, 376 (5th Cir 2008), citing *Ballard v Burton*, 444 F3d 391, 396 (5th Cir 2006).

The moving party typically bears the entire burden to demonstrate the absence of a genuine issue of material fact. *Nola Spice Designs LLC v Haydel Enterprises Inc*, 783 F3d 527, 536 (5th Cir 2015); see also *Celotex Corp v Catrett*, 477 US 317, 322–23 (1986). But when a motion for summary judgment by a defendant presents a question on which the plaintiff bears the burden of proof at trial, the burden shifts to the plaintiff to proffer summary judgment proof establishing an issue of material fact warranting trial. *Nola Spice*, 783 F3d at 536. To meet this burden of proof, the evidence must be both "competent and admissible at trial." *Bellard v Gautreaux*, 675 F3d 454, 460 (5th Cir 2012).

When parties file opposing motions for summary judgment on the same issue, the court reviews each motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party. *Amerisure Insurance Co v Navigators Insurance Co*, 611 F3d 299, 304 (5th Cir 2010), quoting *Ford Motor Co v Texas Department of Transportation,* 264 F3d 493, 498 (5th Cir 2001). Each movant must establish that no genuine dispute of material fact exists, such that judgment as a matter of law is in order. Ibid; see also *Tidewater Inc v United States*, 565 F3d 299, 302 (5th Cir 2009).

### 3. Analysis

The duty to defend will be addressed first, followed by the duty to indemnify.

#### a. Duty to defend

To trigger an insurer's duty to defend, the underlying petition must assert a claim that is potentially covered by the insurance policy. See *Gehan Homes, Ltd v Employers Mutual Casualty Co,* 146 SW3d 833, 845 (Tex App—Dallas 2004, pet denied). Courts generally use the "eight corners rule" to determine potential coverage. Simply put, the allegations within the four corners of the underlying plaintiff's pleadings are compared to provisions within the four corners of the insurance policy. *National Union Fire*

5

*Insurance Co v Merchants Fast Motor Lines Inc*, 939 SW2d 139, 141 (Tex 1997, *per curiam*).

The starting point is the four corners of the operative pleading in the underlying litigation. *Gonzalez v Mid-Continent Casualty Co*, 969 F3d 554, 557 (5th Cir 2020). The underlying petition brought by Retail Games against G Creek in state court is detailed above. Essentially, Retail Games asserts there that G Creek breached their contract when it failed to properly install the roof of the Huntsville building, leading to property damage from various leaks that occurred between 2017 and 2021. Dkt 17-1 at 4.

Considered next are the four corners of the policies that the Insurers issued to G Creek. *Gonzalez*, 969 F3d at 557. The relevant terms of the policies are also set out in detail above. Put simply, each policy applies to (i) an occurrence (ii) that causes property damage, (iii) during the policy period. See *Gonzalez v Mid-Continent Casualty Co*, 969 F3d 554, 558 (5th Cir 2020) (construing identical policy language). But (iv) the policy does *not* apply if the insured knew, prior to the policy period, that the property damage occurred. And in that respect, "any continuation, change or resumption" of such known property damage will not be covered. Dkt 17-1 at 132.

Comparing the four corners of the underlying petition to the policies, it's clear that the first three elements of the policies have been satisfied. And the fourth has within it a question of fact that precludes summary judgment in favor of the Insurers, while at the same requiring summary judgment in favor of G Creek.

i. Occurrence

The petition alleges that G Creek improperly installed the roof. Dkt 17-1 at 4. The parties nowhere dispute that this means an *occurrence* existed under the policy terms.

This is sufficient to satisfy the requirement of an *occurrence*. See *Wilshire Insurance Co v RJT Construction, LLC*, 581 F3d 222, 225 (5th Cir 2009) (interpreting identical policy language and finding that insured's negligent repair of foundation was *occurrence*, even where

physical damages from repairs weren't discovered until years later).

### ii. Causation of property damage

Of note, the underlying petition by Retail Games alleges that G Creek's defective installation of the roof (that is, the occurrence) caused the leaks (that is, the property damage). See Dkt 17-1 at 4 (engineer hired by insurer of Retail Games "determined that the roof leaks were not the result of a covered event but rather the roof leaks were caused by the defective installation of the roof at the time the roof was installed in 2017"). These allegations satisfy the second requirement of the policy, subject to a dispute between the parties over whether leaks constitute *property damage* within the definition of the policies.

The Insurers contend that the Fifth Circuit answered this question in *Maryland Casualty Co v Acceptance Indemnity Insurance Co*, which referred to "leaks" as "property damage." Dkt 18 at 12, citing 639 F3d 701, 708 (5th Cir 2011). G Creek insists that the case is distinguishable because the court "never explained how a 'leak' met [the physical injury requirement]," and "neither party raised that issue for the Court"—meaning that the case can't be relied upon to establish that leaks *always* constitute property damage. Dkt 19 at 17.

In *Maryland Casualty*, two insurers of a pool company disputed their respective obligations to defend and indemnify in a suit alleging negligent pool design and construction. Four separate leaks developed in the years following construction of the pool. The second and third leaks coincided with a crack along the pool wall. 639 F3d at 703–04. In determining the extent of the insurers' obligations, the Fifth Circuit identified "two significant types of property damage," one of which was "the third leak that drained the pool." Id at 708. It also consistently referred to leaks as a distinct type of "property damage" and as "damage events." Id at 708–09.

7

At least one Texas state court has likewise held that leaks are physical injury to tangible property under a policy with the same definition of *property damage*. That court defined *physical injury* as "an alteration in appearance, shape, color or in other material dimension." *Summit Custom Homes, Inc v Great American Lloyds Insurance Co*, 202 SW3d 823, 828 (Tex App—Dallas 2006, pet withdrawn). And, as the Insurers assert, "A fully functioning roof does not allow water intrusion," and thus "a roof leak is . . . an alteration in shape and material dimension." Dkt 20 at 5.

Indeed, when water enters through the roof, it naturally means that the roof's shape and material dimension has been altered in some way. Texas courts have found a sagging roof to be property damage under similar logic. *Great American Lloyds Insurance Co v Vines-Herrin Custom Homes, LLC*, 2016 WL 4486656 (Tex App—Dallas, pet denied). This is because fully functioning roofs don't sag, and thus such sagging constitutes an alteration in material dimension. Just as a sagging roof is an alteration in material dimension—and thus property damage—so, too, is a leaking roof.

For these reasons, the leaks are *property damage* under the policies. But to be clear, nothing is submitted to definitively establish that the leaks made the subject of the underlying petition are the same as (or even overlap in any way with) the leaks noticed in 2017, which were repaired. The underlying petition certainly doesn't plead it that way.

   iii. Timing of property damage

Retail Games alleges that it had twenty-one roof leaks as of September 2021. Dkt 17-1 at 4. Such property damage would be squarely within the policy periods, which covered mid-2020 through mid-2022. Dkt 18-1 at 9, 257, 506, 558. This third requirement of the policy is satisfied.

But apart from timing, more complex here is the question of whether, prior to the policy period, G Creek knew that the property damage had occurred.

iv. Knowledge

G Creek indisputably knew that there were leaks in the subject building in 2017, prior to the policy period. For example, it "exchang[ed] e-mails about the leaks" with Retail Games—nearly three years before it purchased the policies in question. Dkt 18 at 3.

But the underlying complaint alleges that G Creek *fixed* the 2017 leaks. Dkt 17-1 at 4. Nothing definitive has been submitted to establish that G Creek knew of any subsequent leaks until Retail Games filed the underlying lawsuit in 2021. See Dkts 18 at 3, 13 & 19 at 4.

A question thus remains, being whether G Creek's knowledge of the 2017 leaks means that it also had knowledge about the later leaks, which are otherwise indisputably within the policy coverage. The Insurers fail to submit definitive evidence in this regard, and so summary judgment must run in favor of G Creek.

This case is similar to *American Guarantee and Liability Insurance Co v United States Fire Insurance Co*, 255 F Supp 3d 677, 692 (SD Tex 2017). Chief Judge Rosenthal there analyzed a known-loss clause identical to the one in the subject policies. A general contractor that had been sued for negligent construction sought coverage from its insurer. Id at 680. The general contractor had received various complaints about the construction from 2005 to 2007, prior to the start of its insurance policy term in 2007. Id at 693. Specifically, there were leaks near the dome of the roof, which the general contractor had been asked to repair in 2006. Id at 694. Even so, Chief Judge Rosenthal found that the general contractor's mere knowledge of the leak and other minor incidents that occurred before the policy period didn't conclusively establish that it knew about the later-discovered major structural damage that was the focus of the underlying lawsuit. Id. The existence of "minor and isolated" problems that the general contractor had repaired prior to the policy period didn't compel an inference that it knew the construction was "fundamentally flawed and that major structural changes were needed." Id at 693. There was thus

9

still the potential for coverage, given that knowledge of the later, otherwise-covered damage couldn't be established as a matter of law based solely on knowledge of the prior incidents. Id at 694–95.

The same rationale pertains here. Mere knowledge by G Creek of a leak in 2017 doesn't compel the conclusion that it also knew that other, major structural damage might lead to further necessary repairs years later. And the Insurers present nothing definitive to establish that the isolated repair efforts by G Creek in 2017 meant that it knew the roof was fundamentally flawed or that major structural changes would later be necessary.

As such, the Insurers haven't met their burden to show that no dispute of material fact exists that entitles them to summary judgment on the duty to defend.

What's more, under Texas law, when there is "doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in [the] insured's favor." *National Union Fire Insurance Co v Merchants Fast Motor Lines, Inc*, 939 SW2d 139, 141 (Tex 1997). And so, G Creek is entitled to summary judgment on the duty to defend for the very reason that there is a potential for coverage as to the underlying litigation.

   b. Duty to indemnify

Given the above ruling on the duty to defend, decision on the duty to indemnify cannot at this juncture run in favor of the Insurers. See *Utica National Insurance Co of Texas v American Indemnity Co*, 141 SW3d 198, 204–05 (Tex 2004). The motion by the Insurers seeking summary judgment in that regard will be denied.

   c. Fortuity doctrine

The *fortuity doctrine* provides that an insured "cannot obtain coverage for something that has already begun and which is known (or should have been known) to have begun." *Colony Insurance Co v Custom Ag Commodities*, 272 F Supp 3d 948, 961 (ED Tex 2017). It thus bars

coverage for both a "known loss," which is a loss that the insured knew had occurred prior to making the insurance contract, as well as for a "loss in progress," which occurs when the insured is (or should be) aware of loss that is ongoing at the time the policy is purchased. *Warrentech Corp v Steadfast Insurance Co*, 210 SW3d 760, 766 (Tex App 2006).

The Insurers argue that the fortuity doctrine under Texas law precludes coverage. Dkt 18 at 14–15. The terms of the policy agreements largely duplicate the premises of the doctrine. Given the above ruling, a disputed question of fact remains as to the applicability of the doctrine.

4. Conclusion

The motion by Plaintiff National Trust Insurance Company and FCCI Insurance Company for summary judgment is DENIED. Dkt 18.

The cross-motion by Defendant G Creek, Inc. is GRANTED. Dkt 19.

It is DECLARED that National Trust and FCCI have a duty to defend G Creek under policy numbers CPP100056822-01 and CPP100056822-02 in the underlying lawsuit styled *Retail Games, LLC, et al. v G Creek, Inc. DBA G Creek Construction*, Cause No 2130242, pending in the 12th Judicial District Court of Walker County, Texas.

A final judgment will enter by separate order. SO ORDERED.

Signed on September 29, 2023, at Houston, Texas.

Hon. Charles Eskridge
United States District Judge